Filed 2/9/22  P. v. Ortega CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B308609 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA191775) |
| v. | |
| JOSE LUIS ORTEGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Reversed and remanded with directions.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Jose Luis Ortega appeals from a postjudgment order denying his petition for resentencing under Penal Code section 1170.95[1] as to his 1996 conviction of felony murder. We agree with Ortega the superior court erred in finding Ortega was ineligible for relief without issuing an order to show case and holding an evidentiary hearing to determine Ortega's eligibility for relief. In denying the petition, the court relied on the jury finding true the special circumstance that Ortega committed the murder in the commission of a robbery and carjacking, even though Ortega was convicted almost two decades prior to the Supreme Court's holdings in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified the factors a jury should consider in finding a defendant was a major participant who acted in reckless disregard for life. The superior court also erred in engaging in premature factfinding in finding as an alternative basis for its denial of the petition that on the factual record before the court, Ortega was a major participant who acted with reckless disregard for life. We reverse the order and remand with directions for the superior court to issue an order to show cause and hold an evidentiary hearing pursuant to section 1170.95, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Evidence at Trial*

We described the 1996 shooting, robbery, and carjacking in our prior opinion in *People v. Ortega* (Nov. 8, 2004, B160750)

---

[1]    All statutory references are to the Penal Code.

[nonpub. opn.] (*Ortega I*).  On August 20, 1996 Baudillo Hernandez was stopped at a red light on Gage Avenue at the intersection of Gage and Miramonte Boulevard.  He saw a small Toyota on Miramonte at the intersection.  Hernandez also saw a white van on Miramonte drive up behind the Toyota and around it.  The van stopped in front of the Toyota and blocked its path.

According to Hernandez, Ortega and two other Hispanic males got out of the van and walked towards the Toyota.  One of the men pointed a gun at the driver of the Toyota, and the driver got out of the car with his hands up.  Hernandez heard the driver plead with the men to take what they wanted but not to hurt him.  The assailants took several items from the driver's pockets.  Hernandez saw Ortega get into the Toyota.[2]  The assailant with the gun shot the driver of the Toyota, and the shooter and the other assailant got back into the van and drove off behind Ortega, who drove off in the Toyota.

Sergio Alvarado also witnessed the crimes while standing in front of a house on Miramonte.  He observed the Toyota drive on Miramonte towards the intersection at Gage.  The Toyota pulled up behind the white van, which was already stopped at the

---

[2]     At trial, Hernandez testified the driver of the van yelled to the others "let's go, let's go" while the victim said, "Don't shoot. Don't shoot."  However, in a transcript of a 1996 interview Hernandez gave the police (translated from Spanish), Hernandez attributed all of these statements to the van driver.  Hernandez maintained the translated transcript of the interview was inaccurate and the van driver never said, "Don't shoot. Don't shoot."

3

intersection.[3] A Hispanic male got out of the van carrying a gun and forced the driver out of the Toyota. Alvarado heard the driver plead for his life and then saw the Hispanic male shoot the driver. Alvarado saw a second person emerge from the van and get into the victim's car. Alvarado saw the van drive away, followed by the Toyota.

The driver of the Toyota died at the scene from the gunshot wound. When interviewed by the police in 1996, Alvarado denied seeing any tattoos on the shooter. However, when interviewed again by the police in February 1999, Alvarado stated he saw a tattoo with some letters on the back of the shooter's head as the shooter turned around to get back into the van. In August 1999 Alvarado selected Ortega's photo from a six-pack photographic lineup and indicated Ortega looked familiar from the day of the incident.

In 1999 the police found the van believed to have been used in the crimes. At the time the crimes were committed, the van was registered to Ortega. Detective Ortiz located Ortega in custody in Wyoming and went to interview him. In his tape-recorded statement, Ortega told Detective Ortiz that he was an active member of the Florencia 13 Gang. Ortega also admitted he was the driver of the white van during the incident. He said he was stopped at a light on Miramonte when one of the other occupants of the van got out and decided to carjack the Toyota. Ortega stated he did not know beforehand that the other occupants planned to commit the crimes. Ortega claimed that when he saw what was going on, he yelled out, "Hurry up, let's

---

[3] Alvarado admitted that he might have initially told investigators that the van drove-up along side the Toyota, or made a U-turn to "box-in" the Toyota."

4

go.  Don't shoot him." Nonetheless, the person with the gun shot the driver of the Toyota and then drove away in the victim's car. Ortega admitted that he followed the Toyota for a short distance after the shooting.  During the interview, Detective Ortiz saw Ortega had a tattoo with some letters on the back of his head.

B.    *The Verdict and Sentencing*

The jury convicted Ortega of first degree murder (§187, subd. (a); count 1), robbery (§ 211; count 2); and carjacking (§ 215, subd. (a); count 3).  The jury found true the special circumstance that the murder was committed in the commission of a robbery and a carjacking.  (§ 190.2, subd. (a)(17).)  As to each offense the jury found true a principal was armed in the commission of the offense.  (§ 12022, subd. (a)(1).)

The trial court sentenced Ortega on count 1 to life without the possibility of parole based on the special circumstance of the commission of the murder during a robbery, plus one year for the firearm enhancement.  As to count 1 the court also imposed and stayed under section 654 a second term of life without the possibility of parole based on the special circumstance of the commission of the murder during a carjacking.  The court stayed the sentences on counts 2 and 3.

C.    *Ortega's Appeal*

Ortega argued on appeal, among other grounds, that the trial court failed to instruct the jury that to find Ortega guilty of felony murder as an aider and abettor to the robbery or carjacking, the jury had to find he became an aider and abettor before the murder occurred.  Ortega also argued error with respect to the jury's consideration of the gang evidence and

5

ineffective assistance of counsel. We found no prejudicial error and affirmed the judgment but removed the second life sentence because Ortega was charged with only one count of murder and one special circumstance. (*Ortega I*, B160750.)

D.     *Ortega's Petition for Resentencing and the Superior Court's Ruling*

On April 11, 2019 Ortega, representing himself, filed a form petition for resentencing seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. In his petition, Ortega declared he "was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine," and he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." He also checked the box on the form stating he was not the actual killer and did not act with the intent to kill. Further, he asserted he was not a major participant in the felony or did not act with reckless indifference to human life. Ortega requested the court appoint him counsel during the resentencing process. Ortega attached to his petition what appears to be portions of his attorney's opening brief filed in *Ortega I*.

The superior court appointed counsel for Ortega and ordered the People to file a response. The People argued in their response that Senate Bill 1437 was unconstitutional and Ortega was ineligible for relief because, by finding the felony-murder special circumstance to be true, the jury must have found Ortega intended to kill. Ortega responded in his reply that he was entitled to issuance of an order to show cause because he was not

6

a major participant and did not act in reckless disregard for human life under the factors articulated by the Supreme Court in *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522. Ortega and the People filed supplemental briefing addressing whether the court should issue an order to show case based on *Banks* and *Clark*.

On September 2, 2020, following a hearing at which counsel presented argument, the superior court denied the petition, finding Ortega was ineligible for resentencing under section 1170.95 because of the special circumstance finding by the jury. The court explained there was a split of authority in the Courts of Appeal as to whether any challenge to the evidentiary support for the special circumstance finding under *Banks* and *Clark* could be brought in a section 1170.95 petition or only by a petition for writ of habeas corpus. The court agreed with the reasoning in *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted October 14, 2020, S264284 and other cases holding that a petition for writ of habeas corpus was the exclusive remedy.

The superior court also looked at the underlying facts of the case to support its finding Ortega was a major participant who acted with reckless disregard for human life, explaining, "[T]here is no dispute that [Ortega] was the driver of the van that blocked the Toyota. There is no dispute that they, almost immediately after the person who was driving the Toyota got out, shot him. There is no dispute that the way this individual was shot, it seemed to be, based on the witness's testimony, unprovoked. It seemed to be part of a well-coordinated plan, that they weren't going to leave any witnesses." The court added that Ortega was part of a gang, the gang was involved, and "this didn't just happen by accident. This was part of a gang thing to do crime in

7

their area." Further, Ortega's testimony "definitely cuts against him" because he said to the shooter, "'Don't shoot,'" which "shows that he had knowledge that someone had a gun, that a firearm was being used in the particular [crime,] and that is one of the factors." The court made other factual findings on the *Banks* and *Clark* factors, including that as a gang member, the participants "had to know there would be some kind of danger, possibly a reaction to taking somebody's car." The court concluded, "I find, based on the facts, which I am entitled to read, in the opinion and in the transcript, which I read, that this defendant—that there is no injustice or anything. There is nothing that, for example, makes him a getaway driver. . . ."

Ortega timely appealed.

## DISCUSSION

A.  *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848 (*Gentile*).) New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." New section 189, subdivision (e)(3), in turn, limits the felony-murder rule exception to the malice requirement for aiders and abettors to circumstances where the

8

People prove the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.[4] (*Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at pp. 842-843.) If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and could not now be convicted of murder because of changes to section 188 or 189 (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1170.95, subdivision (b)(3). Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and

---

[4] Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) amended section 1170.95, effective January 1, 2022, to, among other changes, (1) apply section 1170.95 to convictions for voluntary manslaughter and attempted murder; (2) add new subdivision (b)(3), which requires the appointment of counsel at the prima facie review stage if requested; (3) affirm the standard of proof at the order to show cause hearing is proof beyond a reasonable doubt; and (4) clarify that "[a] finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

9

permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (See § 1170.95, subd. (c).)

In determining whether the petitioner has made a prima facie showing he or she is entitled to relief under section 1170.95, subdivision (c), "[l]ike the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."' [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis, supra*, 11 Cal.5th at p. 971.)

Appellate opinions are generally part of the record of conviction, but as the Supreme Court in *Lewis* cautioned, the opinion "'might not supply all the answers.'" (*Lewis, supra*, 11 Cal.5th at p. 972.)  Further, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Ibid.*)  Rather, at the prima facie review stage, the court's review is limited to "'readily ascertainable facts'" in the record (such as the crime of conviction).  (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)  The jury instructions given by the trial court are part of the

record of conviction. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 676; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055.)

If the petitioner makes a prima facie showing under section 1170.95, subdivision (c), the court must issue an order to show cause and hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *Gentile, supra*, 10 Cal.5th at p. 853.)

1.     *The major participant and reckless indifference standards under* Banks*,* Clark*, and* Scoggins

As discussed, Senate Bill 1437 amended section 189 to limit the scope of the felony-murder rule, requiring the People to prove beyond a reasonable doubt that the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3); see § 1170.95, subds. (a)(3) & (d)(3).) "Penal Code section 190.2, subdivision (d), enacted by initiative in 1990, provides that 'every person, not the actual killer, who, with reckless indifference to human life and as a major participant' aids or abets an enumerated felony, including attempted [carjacking], that results in death may be convicted of special circumstance murder and sentenced to death or to life imprisonment without the possibility of parole. The statute, by its text, imposes an actus reus requirement, major participation in the enumerated felony, and a mens rea requirement, reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667,

11

674 (*Scoggins*); accord, *Clark, supra*, 63 Cal.4th at p. 615; *Banks, supra*, 61 Cal.4th at p. 798.)

The Supreme Court in *Banks*, *Clark*, and *Scoggins* enumerated the factors courts must consider in determining whether the totality of circumstances demonstrates a defendant was a major participant in the murder and acted with reckless indifference to human life for purposes of liability for felony murder rule and section 190.2, subdivision (d). In *Banks*, the Supreme Court identified the relevant factors in determining whether a defendant is a major participant: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks, supra*, 61 Cal.4th at p. 803, fn. omitted; accord, *Clark, supra*, 63 Cal.4th at p. 611.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court specified the following relevant factors: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for

12

violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?"  (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.)  "'"[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."'"  (*Scoggins*, at p. 677; accord, *Banks, supra*, 61 Cal.4th at p. 803.)

As the *Scoggins* court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'"  (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks, supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a '*grave risk of death*'"].)  "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'"  (*Scoggins*, at pp. 676-677, quoting *Clark, supra*, 63 Cal.4th at p. 617.)

2. *The jury's 1996 special circumstance finding did not make Ortega ineligible for relief as a matter of law*

In *People v. Harris* (2021) 60 Cal.App.5th 939, 954-958, review granted April 28, 2021, S267802 (*Harris*), we rejected the argument made by the People here that a petitioner is ineligible for relief based on a jury's pre-*Banks*/*Clark* felony-murder special-circumstance finding absent a successful challenge to the evidentiary support for the finding by a petition for writ of habeas corpus.  We also held in *Harris* that although the jury could only find true the special circumstance allegation under

section 190.2, subdivisions (a)(17) and (d), if it found the defendant aided and abetted the underlying felony while acting as a major participant with reckless indifference to human life—the same elements now required to show malice under section 189, subdivision (e)(3)—"that pre-*Banks*/*Clark* finding, without more, does not preclude relief under section 1170.95." (*Harris*, at p. 957.)  As we explained, "Because the evidence supporting Harris's special circumstance finding has never been reviewed under the standards set forth in *Banks* and *Clark*, the superior court could properly determine he was ineligible for relief as a matter of law only after reviewing the available record of conviction in light of the *Banks* and *Clark* factors."  (*Harris*, at p. 958)

The Attorney General argues our decision in *Harris, supra*, 60 Cal.App.5th 939 and other cases that reached the same conclusion were wrongly decided, and we should instead follow the holding to the contrary in *People v. Galvan, supra*, 52 Cal.App.5th at pages 1141 to 1144, review granted Oct. 14, 2020, S264284 and its progeny.  The Attorney General has not presented a persuasive reason why we should reject our decision in *Harris*, and we decline to do so.

3.   *The trial court erred in engaging in premature factfinding*

The superior court engaged in improper factfinding in making its alternative finding that Ortega was a major participant who acted in reckless disregard for life.  The court relied on the fact Ortega admitted he was the driver of the van that blocked the Toyota's path and the court's determination the robbery-murder must have been "part of a well-coordinated plan"

14

given that the crimes occurred immediately after Ortega drove in front of the Toyota.  Further, as the Attorney General points out on appeal, the court found Ortega knew the shooter had a gun because he admitted he yelled to his accomplice, "Don't shoot him."

Although Hernandez testified the van stopped in front of the Toyota and blocked its path, Alvarado testified he observed the Toyota pull up behind the van, which was already stopped at the intersection.  Thus, there is a disputed fact whether Ortega, as the driver of the van, blocked the Toyota's path (as described by Hernandez) or was sitting at an intersection when the Toyota pulled up behind the van and the shooter emerged and forced the driver out of the Toyota, then shot him (as described by Alvarado).  Further, the superior court focused on the fact Ortega, by yelling out not to shoot the driver, was admitting he knew one of his accomplices had a gun.  But the court ignored Ortega's statements to Detective Ortiz that he did not know the occupants of the van were going to carjack the Toyota or commit the other crimes, and once Ortega figured this out, he yelled at the shooter not to shoot the driver.  Further, Ortega's statement was consistent with Hernandez's testimony that the driver of the van (Ortega) said "let's go, let's go" before the shooting occurred.  Although it is relevant under *Banks* and *Clark* for purposes of evaluating whether a defendant acts with reckless disregard for human life that a defendant knows the shooter has a gun, it is also significant whether the defendant knew it was likely lethal force would be used and whether he or she made any effort to minimize the risks of violence during the crime.  (*Scoggins, supra*, 9 Cal.5th at p. 677; *Clark, supra*, 63 Cal.4th at pp. 618-622.)

15

The superior court's factfinding, in accepting Hernandez's version of events over Alvarado's and only portions of Ortega's statements to Detective Ortiz, was the type of factfinding prohibited at the prima facie review stage. (*Lewis, supra*, 11 Cal.5th at p. 971; see *People v. Duchine, supra*, 60 Cal.App.5th at p. 815.) Further, in reviewing Ortega's petition, the court was required to take Ortega's factual allegations as true (including that he was not a major participant and did not act with reckless indifference to human life), and the court erred in rejecting these factual allegations without first holding an evidentiary hearing. (*Lewis*, at p. 971.)

## DISPOSITION

The order denying Ortega's petition for resentencing under section 1170.95 is reversed. We remand for the superior court to issue an order to show cause and to hold an evidentiary hearing under section 1170.95, subdivision (d).


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.